UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY SIMMONS,

    Plaintiff,

v.

TRANSUNION, LLC,

    Defendant.
_____/

Case No. 2:24-cv-11378
District Judge Matthew F. Leitman
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS (ECF No. 4)[1]

### I. Introduction

This is a consumer rights case. Plaintiff Tiffany Simmons (Simmons), proceeding *pro se* and *in forma pauperis*, is suing defendant Trans Union LLC (Trans Union) alleging that it violated the Fair Credit Reporting Act (FCRA) by reporting "inaccurate information." (ECF No. 1-3). Pretrial proceedings have been referred to the undersigned under 28 U.S.C. § 636. (ECF No. 5). Before the Court is Trans Union's motion to dismiss for failure to state a claim. (ECF No. 4).

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

The motion is fully briefed,[2] and ready for consideration. For the reasons that follow, it is RECOMMENDED that the motion be GRANTED, and the case be DISMISSED.

## II. Background

On April 18, 2024, Simmons filed a complaint in state court. (ECF No. 1-3). The crux of the complaint reads:

> Defamation of Character. Invasion of Privacy and Negligence.
>
> Transunion continues to report inaccurate information in my consumer credit report. This information that's inaccurately reporting is causing me to be denied credit and causing me great financial harm and stress. I am suing TransUnion LLC for the amount of $6,000.00 (six thousand and zero cents) dollars.
>
> ….
> LEGAL CLAIMS
> Defamation….
> Inaccurate Reporting….
> Failure to Investigate Disputed Items….
> Negligent Handling of Consumer Information….

(*Id.*, PageID.11, 15). She seeks damages and various types of injunctive relief.

(*Id.*, PageID.17) Trans Union timely removed the case to federal court based on

---

[2] Simmons was directed to file a response to Trans Union's motion by July 1, 2024. (ECF No. 6). On July 9, 2024, Trans Union filed a Notice of Plaintiff's Non-Opposition to Trans Union's Motion to Dismiss. (ECF No. 9). However, on July 10, 2024, Simmons filed a response, (ECF No. 10), and Trans Union filed a reply, (ECF No. 11). After that, Simmons filed what appears to be a second response to the motion. (ECF No. 12). She also filed a letter requesting a response from Trans Union to her settlement proposal of $4,000.00. (ECF No. 13). The undersigned has considered all of the filings despite Simmons' filings being late.

federal question jurisdiction and then filed the instant motion.

Liberally construed, Simmons' complaint alleges that Trans Union somehow violated the FCRA by reporting "inaccurate information." She references five (5) purported sections of the FCRA (15 U.S.C. §§ 1681B(2); 1681; 1681e(b); 1681i; and 1681i(a)(5)(A)), and appears to assert claims for "invasion of privacy," "defamation of character," and "negligence." She seeks money damages in the amount of $6,000.00 and injunctive relief.

### III. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

Finally, in ruling on a motion to dismiss, the Court may consider documents which are referenced in the complaint and integral to a plaintiff's claims. *Becker v. PennyMac Loan Servs., LLC*, 583 F. Supp. 3d 1090, 1097 (S.D. Ohio 2022); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).

IV. Discussion

A. FCRA Claims

4

Trans Union argues that the complaint should be dismissed because it fails to identify any factually inaccurate information that Trans Union reported or otherwise set forth any allegations as to how Trans Union violated any of the referenced statutes. The undersigned agrees.

The "FCRA expressly creates a private right of action to enforce many of its terms. Consumers may bring suit to recover actual damages, and potentially attorney's fees and costs, from '[a]ny person who is negligent in failing to comply with any requirement imposed ... with respect to any consumer' under the Act." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012) (quoting 15 U.S.C. § 1681o).

As explained in *LaBreck v. Mid-Mich. Credit Bureau*, No. 1:16-CV-1160, 2016 WL 6927454, at *2 (W.D. Mich. Nov. 28, 2016), the FCRA regulates the field of consumer reporting and governs the collection and use of consumer credit information. The purpose of the Act is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681(b). The Act covers three main actors: (1) credit reporting agencies; (2) users of consumer reports; and (3) furnishers of information to credit reporting agencies. *LaBreck*, at *2 (citing *Ruggiero v. Kavlich*, 411 F.Supp.2d 734, 736 (N.D. Ohio 2005)).

5

The Court assumes that Simmons is asserting a claim against Trans Union as a credit reporting agency. Under 15 U.S.C. § 1681i(a), a credit reporting agency must investigate disputed information free of charge at the consumer's request. However, a violation of this statute does not exist if an inaccuracy does not exist. 15 U.S.C. § 1681i(a).

Simmons alleges that Trans Union reported and furnished "inaccurate information," and that Trans Union is somehow liable under the FCRA for reporting "inaccurate information." However, Simmons has not alleged which information Trans Union reported, or how any of that information was inaccurate. This is a problem for Simmons because a prima facie element of a claim under 15 U.S.C. § 1681e(b) ("reasonable procedures") and 15 U.S.C.§ 1681i ("reasonable investigation") is a "showing that information in a credit report is inaccurate." *Cohen v. Trans Union*, 67 F. App'x 325, 327 (6th Cir. 2003) (citing *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996)); *see also Dickens v. Trans Union, Corp.*, 18 F. App'x 315, 317-18 (6th Cir. 2001); *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 941-42 (6th Cir. 2020). As the court explained in *Elsady v. Rapid Global Business Solutions, Inc.*, No. 09-11659, 2010 WL 2740154, at *6 (E.D. Mich. July 12, 2010):

> [A] plaintiff has failed to carry his initial burden if a court finds that the information contained in a challenged credit report was accurate on its face, or put somewhat differently, technically accurate[.] That is, a credit reporting agency satisfies its duty under section 607(b) if it

6

> produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect.

(internal quotations omitted).

Here, the complaint does not specify what information is at issue, much less how "inaccurate information" resulted from a failure to maintain reasonable procedures or conduct a reasonable reinvestigation. Simmons has not alleged what inaccurate information Trans Union reported or that any third parties received inaccurate credit reports from Trans Union. Thus, at the most basic level, she has not alleged a plausible claim under the FCRA.

Turning more specifically to 15 U.S.C. § 1681b, this section of the FCRA sets forth numerous permissible purposes under which a credit reporting agency is permitted to prepare a consumer report. Although a credit reporting agency may prepare a consumer report "in accordance with the written instructions of the consumer to who it relates," the consumer's consent is generally not required. 15 U.S.C. § 1681b(a). Some of the permissible purposes include: (1) in connection with "a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;" (2) "for employment purposes;" (3) for "the underwriting of insurance involving the consumer;" (4) "in connection with a determination of the consumer's eligibility for a license or other benefit granted by

a governmental instrumentality required by law;" (5) as "a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or repayment risks associated with, an existing credit obligation;" or (6) more generally, "in connection with a business transaction that is initiated by the consumer" or "to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(A-F).

Trans Union cannot be liable under the FCRA for furnishing consumer reports to a person it believes will use the information for one of the several permissible purposes. *See generally id.*; *see also Huertas v. Galaxy Asset Management*, 641 F.3d 28, 34 (3d Cir. 2011) ("the statute expressly permits distribution of a consumer report to an entity that 'intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer'"); *Lusk v. TRW, Inc.*, 173 F.3d 429 (6th Cir. 1999) (affirming the district court's decision to dismiss the plaintiff's complaint because the furnisher had a permissible purpose to access the plaintiff's credit report).

Here, Simmons does not set forth any facts alleging that Trans Union furnished her credit report without a permissible purpose. Importantly, to the extent she alleges that Trans Union needed her permission to share her credit

8

information, such a claim fails. Trans Union does not need instruction, authorization, or permission from Simmons to report her credit information, because no such obligation exists. *See Miller v. Santander Consumer USA*, No. 1:23-CV-5-GHD-DAS, 2023 WL 6156042, at *7 (N.D. Miss. June 13, 2023), *report and recommendation adopted in relevant part*, 2023 WL 6150776 (N.D. Miss. Sept. 20, 2023), *appeal dismissed,* No. 23-60561, 2023 WL 11156604 (5th Cir. Dec. 26, 2023). In *Miller*, the plaintiff alleged that the defendant credit data furnisher, Santander Consumer USA, "did not have her permission to report any of her information to any credit reporting agency without her express consent – in effect claiming the right to exempt herself from any credit reporting on her performance under her contract with the company." *Id*. The district court rejected this argument, and dismissed the claim, explaining:

> [A] quick computer search would readily advise any consumer, on an official government website . . . [t]he Consumer Financial Protection Bureau website puts forth the following question: "I do not want creditors to report my accounts to credit reporting agencies. What can I do?" It then answers – "You have no right to opt out of having creditors report your accounts to credit reporting agencies.").

*Id*.

At best, Simmons appears to simply disagree with Trans Union's reporting and investigation, but she does not describe which exact information she believes to be inaccurate. Therefore, the complaint fails to state a viable claim under the FCRA for Trans Union's reporting, investigation, or otherwise.

9

B.      Invasion of Privacy, Defamation, and Negligence Claims

Simmons also appears to allege a claim of "[i]nvasion of privacy" resulting from Trans Union's reporting. (ECF No. 1-3, PageID.13). She also appears to assert a claim for defamation, alleging that Trans Union reported "defamatory statements…made in the context of false and misleading statements pushed to third parties [sic] credit grantors." (*Id.*, PageID.15). She also asserts "negligence." (*Id.*, PageID.13). However, the FCRA does not allow any of these claims. Under Section 1681h(e) of the FCRA, regarding "Limitations of Liability," Congress has said that "no consumer may bring any action or proceeding in the nature of *defamation*, *invasion of privacy*, or *negligence* with respect to the reporting of information against any consumer reporting agency … *except as to false information furnished with malice or willful intent to injure such consumer*." 15 U.S.C. § 1681h(e) (emphasis added).

To the extent Simmons seeks to allege the exception, *i.e.*, that Trans Union furnished false information with malice or willful intent, her claim fails. As will be discussed more fully below, the complaint contains no facts that give rise to a plausible inference that Trans Union acted with malice or willful intent to injure Simmons.

Additionally, section 1681t(b)(1)(F) of the FCRA provides, in pertinent part, that "[n]o requirement or prohibition may be imposed under the laws of any State

10

... with respect to any subject matter regulated under ... section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies...." As observed in *Barkho v. Homecomings Financial, LLC*, 657 F.Supp.2d 857, 865 (E.D. Mich. 2009), "§ 1681s–2 only regulates conduct related to the reporting of credit information." Thus, a "defamation claim" or other state law claim that "stems directly from the allegedly inaccurate credit reporting by the Defendant" fits "squarely within section 1681 s–2" and is preempted under section 1681t(b)(1)(F) of the FCRA. *Id.*; *see also Munson v. Countrywide Home Loans, Inc.*, No. 08–13244, 2008 WL 5381866, *5 (E.D. Mich. Dec. 17, 2008) (determining that because "the reporting of credit information is the subject matter regulated by § 1681s–2 [of the FCRA]" and the plaintiffs' breach of contract action was based on the defendant's "actions in reporting Plaintiffs' payment history," that claim was preempted by the FCRA); *Chungag v. Wells Fargo Bank, N.A.*, No. 10-14648, 2011 WL 672229, at *5 (E.D. Mich. Feb. 17, 2011), *aff'd*, 489 F. App'x 820 (6th Cir. 2012); *Yaldu v. Bank of Am. Corp.*, 700 F.Supp.2d 832, 843 (E.D. Mich. 2010) (finding a defamation claim was preempted by the FCRA where plaintiff had not alleged facts to support "malice or willful intent to injure the consumer"); *Lochner v. Merrick Bank*, No. 3:19-CV-00036-GFVT, 2020 WL 1976644, at *3 (E.D. Ky. Apr. 24, 2020) ("Therefore, it is clear from the Complaint that Mr. and Ms. Lochner's state law

11

claims for negligence and defamation are based on the allegedly inaccurate reporting of the furnisher, Green Dot, which is the exact type of conduct regulated under § 1681s-2. As a result, both of Plaintiffs' claims are preempted...."); *Poynter v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-773-DJH-CHL, 2016 WL 5380926, at *7 (W.D. Ky. Sept. 23, 2016) ("Because each of the three claims springs from [the defendant's] credit reporting, and because each relates to [the defendant's] obligations after it knew or had reason to know of the disputed information, the claims are preempted by the FCRA and cannot survive the motion to dismiss.").

Simmons' state law claims for invasion of privacy, defamation, and negligence claim are clearly based on Trans Union's allegedly inaccurate reporting. Thus, based on the above authority, these claims fit squarely within § 1681s–2 of the FCRA and are preempted under § 1681t(b)(1)(F) of that Act.

Moreover, preemption aside, Simmons' complaint contains only conclusory allegations as to these claims with virtually no factual detail or any attempt to allege the necessary elements of each claim. As such, she has not met the minimum pleading requirements for any of these claims. Overall, Simmons has not alleged a claim for invasion of privacy, defamation, or negligence sufficient to survive dismissal.

C. Punitive Damages

Simmons requests "punitive damages," which the Court assumes is based on

a claim that Trans Union acted willfully. To maintain such a claim, Simmons must allege specific facts that show a defendant willfully or negligently failed to comply with the FCRA. *See, e.g., Peoples v. Equifax Info. Sols.*, No. 3:23-CV-495-MOC-DCK, 2023 WL 6883650, at *3 (W.D.N.C. Oct. 18, 2023). "To state a willfulness claim, Plaintiff must allege that (1) [Trans Union] had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language; and (2) [Trans Union] ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless." *Id.*; *see also Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009). "Willfully" means either knowingly or with reckless disregard. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58–59 (2007).

Simmons has not alleged facts to support a claim that Trans Union knowingly reported inaccurate information or that it acted in reckless disregard for her rights, nor does she allege facts to support her claim that Trans Union acted negligently. Her conclusory allegations and her failure to allege willfulness are insufficient to show she is entitled to punitive damages.

D.     Simmons' Responses

As noted above, Simmons filed a response to Trans Union's motion, (ECF No. 10), then a second response, (ECF No. 12), as well as a letter requesting that Trans Union respond to her settlement proposal, (ECF No. 13). Although these

13

filings came past the due date, the undersigned will consider them.

Simmons' first response consists of a three page letter. In it, she does not respond to any of Trans Union's arguments for dismissal. Rather, Simmons restates her allegations that Trans Union has reported inaccurate information, that she informed Trans Union, and that she has suffered harm. Her second response consists of a two page letter with some attachments. In her letter, she again repeats her allegations of wrongdoing against Trans Union, but she does not address any of Trans Union's arguments in favor of dismissal. Pages three through nine of the response appear to be portions of a May 30, 2024 letter sent by law firm on behalf of Trans Union containing Trans Union's "investigation results" and references to this case. This document notes that several disputed items were deleted from Simmons' credit report. (ECF No. 12, PageID.178-179). It is unclear whether these disputed accounts are what Simmons is complaining about, but it appears they have been deleted from her report. In her final filing, Simmons asks that Trans Union respond to her settlement demand of $4,000.00.

None of these filings counter Trans Union's arguments for dismissal. As to the letter demanding that Trans Union respond to her settlement offer, there is no authority for a court to require a party to respond to a settlement offer. As Trans Union notes in its reply:

> Here, Plaintiff's Opposition fails to address the glaring deficiencies pointed to in the Motion, never mind explain how she would cure them.

14

> Specifically, Plaintiff has not made a prima facie showing of the elements required for a § 1681e(b) or § 1681i claim, including the threshold requirement of factually inaccurate reporting. *See Cohen v. Trans Union*, 68 Fed. Appx. 325 (6th Cir. 2003). Neither Plaintiff's Complaint nor Opposition specify what information is at issue, much less how such "inaccurate information" resulted from a failure to maintain reasonable procedures or conduct a reasonable investigation. *See generally* Complaint. Despite the Motion informing Plaintiff of this deficiency in her Complaint, her Opposition makes no factual allegations and instead repeats only that she "discovered instances of inaccurate reporting." Accordingly, and because Plaintiff fails to set forth any required allegations of inaccuracies in Trans Union's reporting, reinvestigation, or otherwise, Plaintiff's claims against Trans Union must fail.
>
> Additionally, Plaintiff's Opposition fails to respond to the Motion in that (1) Trans Union does not need Plaintiff's written consent to report her credit information, (2) Plaintiff's defamation and invasion of privacy claims are preempted by the FCRA, and (3) Plaintiff has not and cannot allege facts sufficient to support a willfulness claim under the FCRA. Because Plaintiff has failed to respond to those arguments in her Opposition, those claims are deemed abandoned.

(ECF No. 11, PageID.170).

## V. Conclusion

For the reasons stated above, it is RECOMMENDED that Trans Union's motion to dismiss, (ECF No. 4), be GRANTED and the case be DISMISSED.

Dated: November 1, 2024             s/Kimberly G. Altman
Detroit, Michigan                       KIMBERLY G. ALTMAN
                                        United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 1, 2024.

s/Kristen Castaneda<br>
KRISTEN CASTANEDA<br>
Case Manager